UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **21-CR-6097-DGL** |
| v. | **SENTENCING MEMORANDUM** |
| **STEPHEN PATTISON,** | |
| **Defendant.** | |

_____

Steven Slawinski, Esq., attorney for Stephen Pattison, duly affirms:

I am the attorney for Defendant Stephen Pattison and this is the defense's response to the government's sentencing memorandum (Docket #33). In its brief, the government requested a sentence in this case of the statutory maximum, 120 months, which is well above the Sentencing Guidelines of 46-57 months for this case. Such an upward departure is wholly unjustified under the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a). As such, Pattison requests that the Court impose a custodial sentence within the advisory guideline range.

On November 8, 2021, Pattison pleaded guilty to one count of 18 U.S.C. § 922(g), being a felon in possession of two firearms (a rife and a shotgun) and ammunition. The two weapons were found after law enforcement searched his home after an arrest for absconding from custody in Missouri. At the time of the search, Pattison had been in local custody for his Missouri offense for two weeks. After his arrest and while he was in jail, he communicated with his girlfriend, Rochelle Pfenninger, about attempting to avoid responsibility for the firearms. However, this attempt never affected the investigation of his case.

The government is seeking an upward departure in this case because of Pattison's political and racial beliefs. Evidence shows that Pattison is a white nationalist and has neo-Nazi sympathies and has shared them through social media. While these views are repugnant to most Americans, it is an inappropriate reason for the Court to upwardly depart and impose a harsher sentence. Notably, the PSR has not identified any factors that would warrant a departure from the applicable sentencing guideline range (PSR Paragraph 159). Indeed, the government's sentencing memorandum is a thinly-veiled request to punish Pattison for his unpopular racial beliefs. This is unconstitutional and goes against federal sentencing considerations.

## LEGAL AUTHORITY

At its core, the First Amendment protects impassioned speech - particularly on issues of public debate. Indeed, full-throated speech is of great value to our republic, and is especially important in the realm of political advocacy. This nation has a "profound national commitment to the principle that debate on public issues" - including politics and competing worldviews - "should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

This guarantee is so important that it covers inflammatory, racist, and offensive speech. "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002). As a result, the First Amendment protects words and expression that may encourage or promote violence, as long as they fall short of incitement to violence. In fact, the Supreme Court "has made clear ... that mere

advocacy of the use of force or violence does not remove speech from the protection of the First Amendment." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982).

To distinguish between advocacy of violence, and incitement of violence, the Supreme Court has explained that the speaker, or actor, must have the intent to cause violence, that the risk of violence must be imminent, and that violence must be likely to actually occur. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Hess v. Indiana*, 414 U.S. 105 (1973).

Furthermore, Sentencing Guideline 5H1.10 explicitly states that "[r]ace, sex, national origin, **creed**, religion, and socio-economic status "are not relevant in the determination of sentence" (emphasis added).

## ARGUMENT

The government goes to great lengths to repeat Pattison's social media posts in its submission. However, these posts are not illegal and unrelated to the offense at hand, being a felon in possession of a firearm. The majority of these Facebook posts occurred well before he obtained the two guns. Even though they were vitriolic, Pattison was legally exercising his First Amendment rights in his social media posts.

The tenor of Pattison's messages is <u>defensive</u> and he was not inciting violence or committing another crime. During the unrest in the summer of 2020, Pattison believed that African Americans were going to come to his home in rural Hamlin and attack him and his family. The messages show that he believed that there was an imminent race war on the horizon during the Black Lives Matter protests that summer. This was fueled by the news that he watched and what he read online. There is no mention that Pattison was going to find or attack anyone who was not affecting him. He threatened nobody in particular, nor did he encourage

anyone to harm Black individuals proactively. The posture of the messages was reactionary to what was going on in Rochester and the United States in the summer of 2020.

Donald Oshier is Pattison's co-defendant in a related case, *United States v. Oshier*, No. 21-CR-6162 DGL (W.D.N.Y.) and sold him one of the firearms. According to the messages between them, Oshier shares the same racial animus and prejudices as Pattison. If Pattison were such a danger, then Oshier is as well and should also receive a harsh sentence. Instead, the sentencing guidelines for Oshier are 24-30 months in prison and the government has not requested an above-guideline sentence.[1] If adjudged, this would result in a huge disparity between two similar co-defendants charged with gun crimes who are both prolific white supremacists. If the government were truly serious about its argument to protect the Black community, shouldn't Oshier also receive the maximum sentence as well? Similarly, a defendant in the Eastern District of New York who pleaded guilty to transmitting racist interstate threats to specific people (an attorney and a congressman) received a sentence of only 18 months of incarceration. *United States v. Feeney*, No. 20-CR-541 (WFK), 2022 WL 580955 (E.D.N.Y. Feb. 25, 2022). In that case, the defendant used the same language that can be found in Pattison's posts and messages.

In spite of the language in his messages, the government concedes that there is no evidence that Pattison committed any violent act here. Similar cases before this very Court involving Black Lives Matter protesters were not sentenced anywhere near ten years. In *United States v. Ryan Howe*, No. 21-CR- 6100 CJS (W.D.N.Y. Nov. 18, 2021), the defendant received a three-year probationary sentence for encouraging Facebook followers to throw Molotov cocktails

---

[1] Oshier is scheduled to be sentenced on June 6, 2022, after Pattison's sentencing date of May 23, 2022.

at police during the protests. In *United States v. Mackenzie Dreschler*, No. 21-CR-6064 DGL (W.D.N.Y. August 9, 2021), the defendant received a sentence of a year and a day in custody for setting fire to a police car during a BLM riot in Rochester. Even though Pattison's views are on the opposite end of the spectrum from these defendants, the Court cannot punish him simply for his racial animus.

If Pattison were to receive the maximum sentence, he would not receive any credit for accepting responsibility for his crime. The government is asking the Court to disregard the fact that Pattison admitted his crime and saved the Court and both parties the time and resources associated with a trial. This is totally against the sentencing principles that reward defendants for pleading guilty and accepting responsibility. It also is antithetical to the plea agreement, where the government is agreeing to a third-level reduction in the sentencing guidelines but then asking for the maximum statutory punishment.

Pattison's beliefs, no matter how odious, should not be a reason to increase his sentence. His criminal history is already factored into the sentencing guidelines, and he has never used guns against anyone before. He is not a danger to the community deserving ten years in prison, especially in light of the offense he is charged with. He obtained the guns to protect him and his family against threats he perceived were real. He had no intention of causing harm or inciting violence. He only acted out of a misplaced desire to protect himself and his family from harm and danger.

In its sentencing memorandum, the government repeats and amplifies Pattison's racist messages to inflame. And that is exactly what happens on social media – people feel free to say abhorrent and disgusting things that they would not or cannot say to other people in person. In these times, people use Facebook, Twitter, Telegram and myriad other networks and services to

make themselves feel good and others feel bad. These platforms encourage this behavior and the country and world are worse off. In her song, "You Need to Calm Down"[2], singer Taylor Swift applicably sings:

> *You are somebody that I don't know*
> *But you're taking shots at me like it's Patrón*
> *And I'm just like "Damn, it's 7 a.m."*
> *Say it in the street, that's a knock-out*
> *But you say it in a Tweet, that's a cop-out*
> *And I'm just like, "Hey, are you okay?"*

Neither the Government nor the Court should not treat social media messages the same way it would treat a burning cross on a lawn, a face to face argument or even a threatening phone call. In today's environment, Americans post things on social media that are abhorrent, but absent a specific threat, it is free speech protected by the First Amendment. Pattison, like so many others, have become "keyboard warriors," people who make abusive or aggressive posts on the Internet without any intent to act them out in real life.

The government's additional argument that Pattison should spend the maximum time in prison to deter future misconduct is absurd. Gangs and racism thrive in prisons.[3] For the government to aver that Pattison will come out of the BOP after ten years with a changed opinion on race is a fantasy. More likely, he will become more indoctrinated and even more dangerous for each year that he spends institutionalized. Furthermore, an unduly harsh sentence for his offense would only make him a cause célèbre and inflame and embolden other racists on social media. A 120-month sentence – **more than twice the top of the guideline range** – would only make a bad situation worse and serve no sentencing goals in his particular case. It would

---

[2] Full song posted online at: https://www.youtube.com/watch?v=Dkk9gvTmCXY
[3] See https://www.adl.org/resources/reports/white-supremacist-prison-gangs-in-the-united-states

seem that the Court were treating Pattison differently because of his beliefs and that would add fuel to the fire of those who support white supremacy. A reasonable sentence in this case would help to diffuse the hateful rhetoric found on social media and show that courts can be fair and impartial regardless of a defendant's personal views about race.

## CONCLUSION

For all of the above reasons, the Court should not depart upward in this case and sentence Pattison to a guideline sentencing range followed by a reasonable term of supervised release. Pattison's statement accepting responsibility for his actions is contained as **Exhibit A.**

**DATED**:  Rochester, New York
April 6, 2022

Respectfully submitted,

**/s/ Steven Slawinski**
Steven Slawinski
Assistant Federal Public Defender
Federal Public Defender's Office
28 E. Main Street Suite 400
Rochester, New York 14614
(585) 263-2601; FAX: 585-263-5871
Steven_slawinski@fd.org
*Counsel for Defendant Stephen Pattison*

**TO:**  Brett Harvey
Assistant United States Attorney

Jennifer Fish
United States Probation Officer

# EXHIBIT A

Judge Larimer:

I must have wrote this letter 100 times. I was looking through my PSR and couldn't believe some of the stupid crap I was saying out of being drunk and mad. I guess I was just frustrated with what's going on but I feel like an idiot. Most of the time I was out, I was at work or with my family. I would come home and argue with people on Facebook. I really didn't think it would go this far. I went to a couple protests, but I never hurt anyone. What it doesn't say, but if you watch the videos and look at the pictures, I tried to break up fights and arguments. Yes, online, I talked a big game trying to look tough and now I feel stupid and embarrassed. I've been on my own since I was 15. I got involved with a group of guys who offered family and protection, and in the neighborhood I grew up in, I needed it. As I got older, I got away from those people, but sometimes it's hard to get rid of things that were burned in your brain.

I've been incarcerated for many months. I know I'm going to prison and I'm going to take every class I can to better myself, God willing. Since I've been incarcerated, I have not been able to see my fiancé or children. I went to jail when my fiancé was five months pregnant with our daughter. I have not been able to meet her and it's eating me up inside. She was one year old on February 15. I also lost my grandmother, the only person growing up who loved me unconditionally and tried to help me. I asked the Marshals to go to the funeral and they told me I would have to pay $6,000. When I was at Monroe County Jail, I caught COVID-19, and I had officers threaten me and my family because of what they said on the news about me.

I'm not going to lie, I've had a terrible past and I'm willing to take responsibility for my actions.  I'm just begging you for mercy to not give me the max sentence.  My family is struggling out there and it's killing me inside.  I miss them so much.  I screwed up and I apologize.  I just wanted to keep my family safe.  Thank you for taking the time to read this.  God bless.

Stephen Pattison